IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAMELA THOMPSON, ESQUIRE ,** | : | **CIVIL NO. 1:CV-04-0317** |
| **Plaintiff** | : | |
| v. | : | |
| **ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES,** | : | |
| **Defendant** | : | |

## **M E M O R A N D U M**

Before the court is Defendant's motion for summary judgment.  (Doc. 20.)  The parties have briefed the issues, and the matter is ripe for disposition.  For the reasons set forth below, the court will deny Defendant's motion.

**I.     Background**

      **A.     Procedure**

Plaintiff, Pamela Thompson, filed the instant Complaint on February 12, 2004 against Defendant, the Association of Pennsylvania State College and University Faculties ("the Association").  Plaintiff alleges that Defendant violated the following: 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951.  Defendant filed the instant motion for summary judgment on May 2, 2005.

**B.**     **Facts**

The following facts are undisputed except where noted.  Defendant is a labor union that represents about 6000 faculty and coaches employed by the Pennsylvania State System of Higher Education ("the State System").  Defendant is a party to two collective bargaining agreements with the State System.  Generally, grievances are handled within the campus from which they originated.  However, when a grievance is unresolved, it may be filed at the state level in Harrisburg, Pennsylvania.  Defendant's contract department is charged with investigating and processing state level grievances.  In addition, Defendant's contract department prepares grievance summaries for the Statewide Grievance Committee, who in turn decides whether to advance grievances to arbitration.

On November 25, 2002, Plaintiff was hired as an assistant director in Defendant's contract department.  The duties of Plaintiff's position included, but were not limited to, analyzing grievances and preparing summaries of facts and issues for Defendant's Statewide Grievance Committee.  There were four professional staff members and two support staff in Defendant's contract department.  In addition to Plaintiff, the professional staff included Mary Beth Hamilton, who was hired at the same time as Plaintiff, and two senior directors, C.J. Elder and Trish Pacifico.  All staff reported to William Fulmer, the Association's President.

On or about February 12, 2003, Plaintiff was told by Elder, that another employee, Deb Wynn, said that a support staff member, Dolores Seidel, had told Wynn that Plaintiff had stated that Plaintiff's hiring had been political.  Plaintiff immediately reported this incident to Fulmer.  Plaintiff stated Seidel's statement was a lie and that she regarded Seidel's statement as being racially hostile.  After Plaintiff

spoke with Fulmer, he promised to investigate the incident.  Fulmer later reported to Plaintiff that Seidel stated that she would apologize to Plaintiff.  At that time, Plaintiff made no additional complaints to Fulmer.  Soon after, Seidel recanted her offer to apologize and reported that she was planning to retire.  After that, Seidel remained out of the office for almost the entire span of her remaining time using accumulated leave time.  Plaintiff also spoke and wrote to Personnel Committee Chair, Sally Ross, regarding the incident.

On March 11, 2003, Fulmer sent an e-mail to Plaintiff stating that he was "very satisfied with [her] overall performance."  (Pl.'s Statement of Material Facts, Ex. 8 at 18.)  Fulmer's e-mail also stated that her "case productivity seems to be right on target."  (*Id*.)  Fulmer indicated that he was interested in reviewing Plaintiff's performance.  (*Id*.)

On March 14, 2003, Ross received an additional phone call from Plaintiff asserting that she was being blamed for Seidel's decision to retire.  At that time, Ross decided to hold a meeting with the Harrisburg staff to address a number of interpersonal problems among staff.  During the staff meeting, Fulmer addressed the issue of Seidel's comments.  Fulmer stated that "people make mistakes but we need to be understanding." (Thompson Dep., Ex. 3 at 67.)  Additionally, Plaintiff provides in an affidavit that Fulmer stated at the meeting that "[the Association] was under the threat of litigation."[1]  (Thompson Aff. at 1.)

Plaintiff was serving a six-month probationary period, and was to be evaluated after three months.  The three-month evaluation of Plaintiff consisted of a

---

[1] While Defendant does not object that the statement was made, it asserts that the statement did not relate to Plaintiff or Plaintiff's complaints.

self-evaluation, an evaluation by Elder and Pacifico, and a final evaluation by Fulmer. On March 21, 2005, Elder and Pacifico submitted their review of Plaintiff.  Elder and Pacifico's review provided, among other criticisms, that Plaintiff should ask questions, become more knowledgeable of the Department's policies and procedures, learn to identify issues, and treat support staff with respect.  (Def.'s Exs. in Supp. of Summ. J., Ex. 6 at 41.)  According to Plaintiff, she attempted to discuss the issues addressed in her review with Elder; however, Elder was unavailable to do so due to other commitments.  (Pl.'s Counterstatement of Material Facts ¶ 12.)

On March 21, 2005, Fulmer provided Plaintiff with a written review. Fulmer's review specifically stated that Plaintiff needed to work with other members of the department of directors as a team, that her behavior towards support staff was unacceptable, her written communications were poor, and that there were several instances of missing the "point" in her casework.  Fulmer's review ended by stating that "I expect significant improvement in all these areas if you are to be retained as a regular employee.  I do believe that you can accomplish the improvements within the balance of your probationary period, but will require significant effort on your part." (Def.'s Exs. in Supp. of Summ. J., Ex. 6 at 49.)  Prior to the reviews by Elder, Pacifico, and Fulmer, there is no evidence that Plaintiff was informed of her alleged unsatisfactory performance.

On April 3, 2003, thirteen days after completing his review of Plaintiff, Fulmer discharged Plaintiff.  According to a letter written by Fulmer, "following [the] three-month performance conferences, I have come to the conclusion that you have not made significant progress that would demonstrate an ability to accomplish the required corrections in the remaining time of your probationary period."  (*Id*. at 42.)

4

**II.        Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.

" 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.      Discussion

Section 1981 secures the right for all persons to make and enforce contracts. 42 U.S.C. § 1981. Title VII and the PHRA prohibit discrimination based upon race in employment decisions such as hiring, discharge, and promotion. 42 U.S.C. § 2000e-2(a)(1); 43 Pa. Cons. Stat. § 951. The Supreme Court has established a three-step burden shifting analysis to establish if an employer has discriminated against an individual in the context of employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden shifting analysis was developed to deal with claims under Title VII; however, it has also been applied to claims under the PHRA and § 1981. *Sherrod v. Phila. Gas Works*, 209 F. Supp. 2d 443, 449 (E.D. Pa. 2002); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498-99 (3d Cir. 1999). Therefore, the court will analyze Plaintiff's Title VII, PHRA, and § 1981 claims under the *McDonnell Douglas* framework.

In *McDonnell Douglas*, the Supreme Court provided that a plaintiff has the initial burden to establish a prima facie case. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to rebut the plaintiff's assertion of discrimination. *Id*. If the defendant is able to produce a legitimate non-discriminatory reason, the presumption of

discrimination fails and the burden once again shifts to the plaintiff to show that the defendant's proffered reasons are pretextual. *Id* at 803.

In the instant case, Plaintiff asserts two claims: (1) Defendant discriminated against her based on her race and (2) Defendant retaliated against her because she opposed what she alleged to be racial discrimination in the workplace. With respect to Plaintiff's discrimination argument, Defendant asserts that Plaintiff fails to meet her prima facie case, or in the alternative that it had a legitimate, nondiscriminatory reason for terminating Plaintiff. With respect to Plaintiff's retaliation claims, Defendant asserts that there is no evidence that Plaintiff was retaliated against for opposing alleged racial discrimination. Plaintiff's claims and Defendant's corresponding arguments for summary judgment will be addressed in turn.

### A.  **Discrimination**
#### i. **Plaintiff's Prima Facie Case**

Defendant asserts that Plaintiff fails to establish a prima facie case for her discrimination claim. The first step for the court is to determine the specifications of Plaintiff's prima facie case. The "facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from [the complainant] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas Corp.,* 411 U.S. at 802 n.13. "The importance of *McDonnell Douglas* lies . . . in its recognition of the general principle that . . . [the] plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977); *see also  Jones v. Sch. Dist.*

*of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999) ("[A] prima facie case cannot be established on a one-size-fits-all basis.")   Defendant relies upon *Harden v. Southwark Metal Mfg. Co.*, No. 99-4666, 2002WL 31194220 at * 3 (E.D. Pa. Oct.2, 2002), for the position that to establish a prima facie case in the instant case, Plaintiff must show that: "(1) [s]he is a member of a protected class, (2) that [s]he was qualified for the job [s]he was performing, (3) that [s]he was satisfying the normal requirements of the job and (4) that [s]he was the object of adverse action." *See Payne v. Heckler*, 604 F. Supp. 334, 339 (E.D. Pa. 1985) ([P]laintiff must satisfactorily demonstrate competency at the normal requirements of her job."). According to *Pivirotto v. Innovative Systems, Inc.*,191 F.3d 344, 357 (3d Cir. 1999), Plaintiff does not need to establish that she was replaced by a someone outside of the protected class.  Defendant concedes that Plaintiff was a member of a protected class and that she was subjected to an adverse action.  Moreover, it is uncontested that Plaintiff was qualified for the position.  However, Defendant alleges that Plaintiff has failed to establish that she satisfied the normal job requirements.  Thus, according to Defendant, Plaintiff fails to make a prima facie case.

In support of its position, Defendant relies upon Plaintiff's negative evaluations by Pacifico, Elder, and Fulmer.  As stated, Plaintiff's evaluations addressed Plaintiff's alleged need to work with other members of the department of directors as a team, to ask more questions, become more knowledgeable of the contract department's policies and procedures, learn to identify issues, and treat support staff with respect. (Def.'s Exs. in Supp. of Summ. J., Ex. 6 at 41, 49.)

In response, Plaintiff asserts the following: (1) she routinely sought information and assistance from her colleagues on matters for which she was

unfamiliar; (2) William Fulmer and a board member, Roy Pointer complimented Plaintiff on her performance; (3) Plaintiff was unrealistically expected to acquire a working knowledge of unwritten practices and procedures; and (4) at no time prior to the issuance of the negative evaluation was Plaintiff informed that she was violating these unwritten rules and policies.

Essentially, before the court is conflicting evidence. On the one hand are the negative reviews by Pacifico, Elder, and Fulmer. On the other hand is the e-mail from Fulmer, ten days before Pacifico, Elder, and Fulmer's reviews were given to Plaintiff, in which Fulmer stated that he was "very satisfied with [Plaintiff's] overall performance." (Pl.'s Statement of Material Facts, Ex. 8 at 18.) Moreover, there is the deposition testimony of Roy Pointer, a member of the personnel committee, who stated that he personally informed Plaintiff that he had heard she was doing a good job. (*Id.*, Ex., 11 at 3.) Additionally, Plaintiff provides numerous e-mails dated from December 3, 2002 through March 31, 2003 from Plaintiff to staff demonstrating she was asking appropriate questions and seeking help from her co-workers. (*Id.,* Ex. 8.) Because of the conflicting nature of this evidence and the temporal proximity of these events, the court finds that a material question of fact exists for a jury to determine. Accordingly, for the purposes of summary judgment, the court finds that Plaintiff has made her prima facie case.

### ii. **Defendant's Legitimate, Nondiscriminatory Reason**

Once the plaintiff has established a prima facie case, the burden shifts to Defendant to rebut Plaintiff's assertion of discrimination. Defendant has only a burden of production and not a burden of proof. *Tex. Dep't. of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 254 (1981). "[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993). Therefore, Defendant need only produce a legitimate non-discriminatory reason for the actions in question. *Tex. Dep't. of Cmty. Affairs,* 450 U.S. at 254.

Defendant asserts that Plaintiff failed to satisfy the normal job requirements, and that this was a legitimate, nondiscriminatory reason for terminating Plaintiff. The court finds that this qualifies as a legitimate, nondiscriminatory reason for terminating Plaintiff. Thus, Defendant has met its burden of production.

### iii. Plaintiff's Assertion that Defendant's Proffered Reasons are Pretextual

Since Defendant is able to produce a legitimate, non-discriminatory reason, the presumption of discrimination fails and the burden once again shifts to Plaintiff. *Id.* at 256. Plaintiff may avoid summary judgment by one of two ways. First, Plaintiff may show, by a preponderance of the evidence, that Defendant's asserted reasons were pretextual, "that is, that they are false and that the real reason for the employment decision was discriminatory." *Waldron v. SL Indus.*, 56 F.3d 491, 494 (3d Cir. 1995). Second, Plaintiff may "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' " *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff mirrors its first argument regarding Plaintiff's prima facie case; Plaintiff was terminated for failing to satisfactorily perform her job. Likewise, Plaintiff's response to Defendant's legitimate, nondiscriminatory reason is also based on the same rationale articulated in Plaintiff's prima facie case. As such, the court's analysis as applied to Plaintiff's prima facie case applies to Defendant's legitimate, nondiscriminatory reason. *See supra* at 9. The court finds that Plaintiff has demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered legitimate reasons for terminating Plaintiff to create a genuine issue of fact. *Fuentes,* 32 F.3d at 765. Accordingly, the court will deny Defendant's motion for summary judgment on this issue.

### B.  **Retaliation**

Plaintiff alleges that she was retaliated against for opposing alleged racial discrimination in the work place. Plaintiff's retaliation claim is based upon Title VII and the PHRA.[2] In response to Plaintiff's retaliation claim, Defendant asserts that Plaintiff fails to provide any evidence that Plaintiff was retaliated against for opposing practices made unlawful by Title VII, the PHRA, and § 1981.

Defendant focuses on several events that it asserts do not qualify as retaliation. Specifically, Defendant references the failure of a union officer to return Plaintiff's telephone calls, an incident in which Plaintiff alleges that a janitor implied that she had told a lie, and Plaintiff's assertion that her computer seemed to break

---

[2] Title VII prohibits retaliation against an individual who has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3. The PHRA provides that it is unlawful "[f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act." 43 Pa. Cons. Stat. § 955(d).

down often. "Courts have operationalized the principle that retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment into the doctrinal requirement that the alleged retaliation constitute 'adverse employment action.' " *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997). The court finds that these events in and of themselves do not amount to retaliation. However, it is not disputed that Plaintiff was terminated. It is clear that termination qualifies as an adverse action. Thus, the issue that the court will address is whether Plaintiff's termination was in retaliation for her protected activity. To be clear the only event that qualifies as retaliation is Plaintiff's termination.

   A claim of illegal retaliation follows the burden shifting analysis of *McDonnell Douglas*. Plaintiff has the initial burden to make a prima facie case. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to rebut the plaintiff's assertion of discrimination. *Id*. If the defendant is able to produce a legitimate, non-discriminatory reason, the presumption of discrimination fails and the burden once again shifts to the plaintiff to show that Defendant's proffered reasons are pretextual. *Id* at 803.

   Defendant's argument makes no mention of Plaintiff's burden to establish a prima facie case. Instead, Defendant makes a broad assertion that there is no evidence to support Plaintiff's allegation that she was discharged because she complained about alleged racial hostility.

   While Defendant fails to even mention Plaintiff's prima facie case for retaliation, the court finds that Defendant's assertion that Plaintiff fails to provide

evidence to support her claim that she was retaliated against may be construed to attack Plaintiff's prima facie case.  To establish a prima face case for retaliation, Plaintiff must establish (1) that she engaged in a protected activity; (2) that the employer took an adverse employment action against her; and (3) that a casual link exists between the protected activity and the adverse employment activity.  *Robinson*, 120 F.3d at 1299-1300.

It is not disputed by Defendant that Plaintiff engaged in a protected activity.  Plaintiff complained to Fulmer and also to Ross about what she considered to be racial hostility towards her in the work place.  Also, it is not disputed that Plaintiff suffered an adverse employment action.  The issue is whether Plaintiff has established a causal link between the protected activity and the adverse employment action.

According to the Third Circuit, "a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation." *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). Plaintiff began to voice her complaints in mid-February 2003.  Plaintiff continued to address the situation with Ross, and on March 14, 2003, a meeting was held that addressed Plaintiff's complaints regarding the comments made by Seidel.  Plaintiff received negative reviews on March 21, 2003, and was terminated on April 3, 2003. Thus, the court finds that Plaintiff's discharge was subsequent to her protected activity and that the temporal proximity creates an inference of causation.

Moreover, during the meeting arranged by Ross, Fulmer stated that the Association was under the threat of litigation. (Thompson Aff. at 1.)  Fulmer also stated that "people make mistakes but we need to be understanding."  (Thompson

Dep., Ex. 3 at 67.) Seven days later Plaintiff received negative reviews that contradicted earlier positive comments she had received. Plaintiff was subsequently terminated fourteen days after her reviews. Plaintiff asserts that Fulmer's comments were made with respect to her complaints regarding Seidel's remarks. Defendant asserts that they were not. This creates a question of fact for a jury to determine. Thus, for purposes of summary judgment, the court finds that Plaintiff has made a prima facie case with respect to the issue of retaliation.

       The burden now shifts to Defendant to articulate some legitimate nondiscriminatory reason for terminating Plaintiff. As in Defendant's arguments regarding Plaintiff's discrimination claim, Defendant asserts that Plaintiff was terminated because she failed to satisfy the normal job requirements. The court finds this to be a legitimate nondiscriminatory reason; however, as in Plaintiff's claims of discrimination, the court finds that there is material issue of fact regarding whether Defendant's proffered reasons are worthy of credence. *See supra* at 9. The court finds that whether or not Plaintiff was satisfactorily performing her job is a question for the jury to determine. As such, the court will deny Defendant's motion for summary judgment with respect to this issue.

**IV.      Conclusion**

In accordance with the foregoing discussion, the court finds that Defendant's motion for summary judgment should be denied. An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: July 26, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAMELA THOMPSON, ESQUIRE,** : | **CIVIL NO. 1:CV-04-0317** |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **ASSOCIATION OF** : | |
| **PENNSYLVANIA STATE** : | |
| **COLLEGE AND UNIVERSITY** : | |
| **FACULTIES,** : | |
| : | |
| **Defendant** : | |

## **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) Defendant's motion for summary judgment is **DENIED.**

2) The August 18, 2005 pretrial conference is moved from 1:30 p.m. to 11:15 am.

3) All other dates and times remain unchanged.

                                                 s/Sylvia H. Rambo
                                                 SYLVIA H. RAMBO
                                                 United States District Judge

Dated: July 26, 2005.